418 So.2d 570 (1982)
STATE ex rel. Helen T. BAILEY
v.
CITY OF WEST MONROE.
No. 81-KH-1184.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 3, 1982.
*571 Lee E. Ineichen, Jr., Indigent Defender Board, Monroe, for defendant-relator.
James A. Norris, Jr., City Atty., West Monroe, for plaintiff-respondent.
BLANCHE, Justice.
Defendant was charged with disturbing the peace, simple battery, and resisting arrest in violation of West Monroe City Ordinances. Initially defendant appeared in court without counsel and was found guilty as charged in the City Court of West Monroe. After an appeal to the Fourth Judicial District Court, her conviction and sentence were reversed and remanded to the City Court. Defendant was determined to be indigent and counsel was appointed; she was tried again in a bench trial and found guilty as charged.
The head cashier at Fred's Department Store, located in McMillan Mall in West Monroe, gave testimony regarding the events leading up to the arrest of defendant's daughter which, in turn, led to defendant's own arrest. She stated she was working as a cashier at the check out counter of Fred's and noticed a teenaged girl, later identified as defendant's daughter, enter the store and proceed to the film rack about fifteen feet from the check out counter. She then saw defendant's daughter pick up a roll of film from the rack and proceed to *572 walk out of the store with the film. However, when defendant's daughter noticed that the cashier was watching her, she returned and asked the cashier if she could get a refund on the film. When defendant's daughter could not produce a receipt, they then went to talk the matter over with the store manager, who advised that she could not obtain a cash refund without a cash receipt, though she could exchange the film. Defendant's daughter was not interested in the exchange, and left the store with the film.
The cashier then told the manager what she had observed and, with this information, the manager summoned the assistant manager to watch the store and call the police while he followed defendant's daughter. About 15 to 20 minutes later, defendant's daughter was observed entering Beall's Department Store, which is located next to Fred's Department Store.
Captain Stanley of the West Monroe Police Department testified that, when he arrived, the assistant manager told him what had occurred and the two left the store to locate defendant's daughter at Beall's. When they found her,[1] Captain Stanley advised her of her rights, arrested her, and took her back to Fred's Department Store for interrogation. Two shoppers in Fred's at that time overheard Captain Stanley's attempts to interrogate defendant's daughter and recognized her as the daughter of a woman they had seen earlier in Beall's. One of the shoppers went to Beall's and notified defendant that her daughter was being arrested in Fred's.
Upon learning of her daughter's plight, the defendant entered the store and confronted Captain Stanley, who advised her that he was going to arrest her daughter for shoplifting. Defendant's attitude at that time became belligerent, and she responded that he was not going to arrest her daughter nor take her anywhere. Captain Stanley testified that he carefully explained to defendant that she could accompany her daughter to the police station and that the girl would be released to defendant after the booking procedures were completed. Defendant responded by continually counselling her daughter not to give the officer any identification. Captain Stanley testified that he repeatedly told defendant to stop interfering with the investigation or she would be arrested. When Captain Stanley noticed a crowd of people begin to gather, he called for assistance.
The defendant then inquired about what was stolen and was told that it was film. She requested that her daughter be searched by one of the bystanders, but this search did not produce the film. In a short time, two additional policemen, Officer Traweek and Major Naron, responded to the call and, after their arrival, defendant continued to tell her daughter not to answer any questions. At that point, Captain Stanley formally placed defendant under arrest. The defendant began fighting when they attempted to handcuff her, but she was subdued and defendant and her daughter were then transported to the correctional center.
When they arrived at the center, Major Naron went to assist defendant out of the police vehicle. She seemed calm while seated but, as she moved out, she became violent and kicked Naron several times. After leaving the vehicle, defendant began walking down the street but the officers restrained her and directed her back to the jail.
Assignments of Error Numbers 1, 2 and 3
Defendant's first three assignments of error are consolidated into one argument. By these assignments, she contends that (1) her daughter's arrest was illegal; (2) she had the right to advise her daughter, a juvenile, to resist the allegedly illegal arrest; and (3) defendant's arrest for instructing her daughter to resist the arrest *573 was illegal and, therefore, she had the right to resist her own arrest. Resolution of these assignments depends upon the legality of the arrest of defendant's daughter, which was the precipitating factor in the conduct which resulted in the charges against defendant.
The arrest of a suspected shoplifter is provided for in C.Cr.P. art. 215, which states, in part, as follows:
A peace officer may, without a warrant, arrest a person when he has reasonable grounds to believe the person has committed a theft of goods held for sale by a merchant, regardless of the actual value of the goods. A complaint made to a peace officer by a merchant or a merchant's employee shall constitute reasonable cause for the officer making the arrest.
Although C.Cr.P. art. 215 provides that an officer may arrest a suspected shoplifter upon "reasonable grounds", we are of the opinion that this phrase is synonymous with probable cause when used in the context of an arrest rather than a detention.[2] This interpretation is consistent with jurisprudence which has interpreted "reasonable cause" for an arrest in C.Cr.P. art. 213 as the equivalent of probable cause. C.Cr.P. art. 213 specifies the circumstances under which an arrest by an officer without a warrant is lawful, and states that an officer may arrest a person without a warrant when he has "reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer." In State v. Drew, 360 So.2d 500 (La.1978), this Court stated:
Reasonable cause, which we have treated under this article [213] as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime.
Under our interpretation of "reasonable grounds" in C.Cr.P. art. 215(A), a suspected shoplifter's arrest must be based upon probable cause.
C.Cr.P. art. 215 further provides that a complaint from a merchant or his employee constitutes "reasonable cause" for an arrest. In this context, "reasonable cause" is also the equivalent of probable cause, and the officer may arrest a suspected shoplifter upon the complaint of a merchant without independently ascertaining the facts supporting the merchant's complaint. Though not relevant to our inquiry here, we note that, if a merchant does abuse the right and acts unreasonably to cause the arrest of another, the injured party will have a civil action against the merchant for damages. Hardin v. Barker's of Monroe, Inc., 336 So.2d 1031 (La.App. 2nd Cir. 1976); Brasher v. Gibson's Products Co., Inc., 306 So.2d 842 (La.App. 2nd Cir. 1975).
An officer summoned to the scene of an alleged shoplifting incident often does not have time to evaluate for himself whether or not the underlying facts establish probable cause to support the merchant's accusation that shoplifting has occurred and still have the opportunity to apprehend the suspect. Accordingly, he must rely upon the complaint of a merchant or his employee and this complaint alone is sufficient to establish probable cause for the officer to make the arrest. However, the legality of that arrest is still dependent upon whether the facts known to the merchant are sufficient to establish probable cause.
Probable cause to arrest exists when facts and circumstances are sufficient to justify a person of ordinary caution in believing that the person to be arrested has committed a crime. State v. Randolph, 337 So.2d 498 (La.1976). In the case at bar, the actions observed by the cashier were sufficient to establish probable cause for the *574 arrest. She observed defendant's daughter enter the store without film, saw her pick up film from the rack, was distracted by a customer and, when she looked back, observed defendant's daughter heading out of the store with the film she reasonably believed was taken from the store's film rack. The cashier stated that, when defendant's daughter saw she was being watched, she returned and asked for a refund, but could not produce a receipt. Defendant's daughter did not have a purse when she entered the store, but she was wearing a coat and, though it is possible she had the film in her coat pocket, the facts observed by the cashier were sufficient to justify a person of ordinary caution in believing that defendant's daughter was guilty of shoplifting. Probable cause, and not absolute certainty, is the test to be applied in judging the validity of an arrest, and all possible lawful explanations of a situation need not be negated before making an arrest. State v. Winfrey, 359 So.2d 73 (La.1978); State v. Phillips, 347 So.2d 206 (La.1977). The arrest of defendant's daughter was based upon probable cause and was, therefore, legal.
Defendant's conviction for resisting an officer was based upon West Monroe City Ordinance article 70,[3] which defines resisting an officer as "the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of the property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property or serving process is acting in his official capacity." It also provides that the phrase "obstruction of", as used in the ordinance, "shall in addition to its common meaning, signification and connotation mean: ... (3) Refusal by the arrested party to give his name and make his identity known to the arresting officer." Section (3) makes it clear that defendant's daughter did not have the right to refuse to give the arresting officer her name, and the defendant's instruction to that effect constituted the offense of resisting an officer. Defendant's conduct would be included in the common meaning of the term "obstruction" and, thus, would be prohibited by the article as "the intentional obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest when the defendant knew the person making the arrest was acting in his official capacity."
Defendant's arrest for resisting an officer was for instructing her daughter not to give her name to the officers rather than for counselling her not to incriminate herself as defendant contends. Undoubtedly, a parent would have the right to instruct a child to exercise any lawful right; however, that is not the situation presented by this case. Defendant did not have the right to direct her daughter to resist an officer by refusing to give her name pursuant to a legal arrest. Defendant's arrest for resisting an officer was legal; therefore, her conduct following the arrest which resulted in the other charges against her, including shouting profanities and kicking an officer, was not justified as resistance to an unlawful arrest.
These assignments are without merit.

Assignment of Error Number 4
By this assignment defendant contends her sentences were excessive.
Even though a sentence is within the statutory range, it may still violate a defendant's right against excessive punishment and is subject to this Court's appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The maximum possible sentences for each offense for which defendant was convicted were a fine not to exceed $500 and confinement for a term not to exceed 6 months, or both, together with court costs. Defendant was fined $50 and costs, or 10 days in jail for disturbing the *575 peace; $150 and costs, or 30 days in jail for simple battery; and $200 and costs, or 40 days in jail for resisting an officer.
In imposing sentence, the trial court noted that defendant has no prior history of criminal conduct. It also appears that there were circumstances tending to excuse defendant's conduct, though failing to establish a defense, because she felt she was protecting her daughter. However, the trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Spencer, 374 So.2d 1195 (La. 1979); State v. Sepulvado, supra. The sentence imposed for disturbing the peace is not apparently severe and the sentences imposed for simple battery and resisting an officer do not appear to be an abuse of the trial court's discretion because of the relatively serious nature of these offenses.
This assignment is without merit.

Assignment of Error Number 5
In this assignment, defendant argues she was prejudiced by ineffective assistance of counsel. The issue of ineffective assistance of counsel is more properly raised by writ of habeas corpus. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Malveaux, 371 So.2d 820 (La.1979); State v. Anthony, 347 So.2d 483 (La.1977).
This assignment is not properly before the Court at this time.
Accordingly, defendant's convictions and sentences are affirmed.
AFFIRMED.
LEMMON, J., concurs.
NOTES
[1] The officer did not formally arrest defendant's daughter until they returned to Fred's. However, he testified he would not have allowed her to walk off after he approached her in Beall's Department Store; therefore, she was technically under arrest at that time. State v. Wichers, 392 So.2d 419 (La.1980); State v. Morvant, 384 So.2d 765 (La.1980).
[2] This construction of reasonable cause in the context of an arrest does not, of course, affect our previous holding that reasonable cause for an investigatory detention is something less than probable cause. State v. Hudgins, 400 So.2d 889 (La.1981).
[3] West Monroe City Ordinance 70 is similar to R.S. 14:108, which also defines refusal by an arrested party to give his name and make his identity known to the arresting officer as resisting an officer.